### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

WILLIAM SETTLES,

        Plaintiff,

        v.

UNITED STATES OF AMERICA,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.:  05-1361 (JR)
Next Court Deadline: 3/17/08
Trial

### PLAINTIFF'S BENCH BRIEF REGARDING DAMAGES UNDER
### THE WRONGFUL DEATH ACT AND SURVIVAL ACT

Now comes the Plaintiff, by and through counsel, Thomas C. Cardaro, Jeffrey L. Peek, C. Drew Fritch and Cardaro & Peek, L.L.C., and hereby submits the Plaintiff's Bench Brief Regarding Damages Under the Wrongful Death Act and Survival Act.

### BACKGROUND

This is a complex medical malpractice case involving the death of Selena Settles on September 28, 2003 at age twenty-nine (29).  Ms. Settles leaves behind, inter alia, four minor children, two daughters, Charnese and Janiya, and two sons, Ronald and Ronnelle.  At the time of Ms. Settles' death, Charnese was age 10, Janiya age 6, and Ronald age 3.  Tragically, Ms. Settles' died giving birth to Ronnelle.  Ms. Settles' children lived with their mother and received all of their daily needs from her.  Among other things, Ms. Settles cooked her children meals, gave them baths, put a roof over their heads, and provided them with other basic necessities of life.  In addition to providing homemaking services, Ms. Settles also provided her children care, guidance, education and parental advice.

Ms. Settles' father, William Settles, as Personal Representative of his daughter's estate, is prosecuting a Wrongful Death Action on behalf of Ms. Settles' four minor children for the

loss of their mother's homemaking services and the loss of their mother's care, guidance, education and parental advice.  Mr. Settles is also seeking damages under the Wrongful Death Act for the loss of services which his daughter would have provided to him but for her death. Additionally, Mr. Settles is prosecuting a Survival Action on behalf of his daughter's estate for the conscious pain and suffering Ms. Settles experienced prior to death.

## DAMAGES UNDER THE WRONGFUL DEATH ACT

The purpose of enacting the District of Columbia Wrongful Death Act "was to ameliorate the harsh rule that denied recovery if the injured person died."  Hord v. National Homeopathic Hospital, 102 F.Supp. 792, 793 (D. D.C. 1952).  As such, the "statute[] must be construed and applied in the liberal spirit contemplated by their framers and with a view to effectuating [its] purpose."  Id.  Under the Wrongful Death Act, the decedent's next of kin are entitled to receive compensation for the loss of services that the decedent would have provided but for her death.  See D.C. Code §16-2701, et seq.; District of Columbia v. Hawkins, 782 A.2d 293, 303 (D.C. 2001); Doe v. Binker, 492 A.2d 857, 863 (D.C. 1985); Runyon v. District of Columbia, 463 F.2d 1319, 1321, 150 U.S. App. D.C. 228 (1972); Johnson v. W.M.A.T.A., 901 F.Supp. 1, 7 (D. D.C. 1995); see also, Standardized Civil Jury Instructions for the District of Columbia, §14.05 Wrongful Death Act Damages (instructing jury to "set a dollar amount on the reasonable value of any services that the deceased would have provided to each beneficiary over their joint life expectancies").  When the decedent is a parent of one or more of the next of kin, recovery is allowed for the value of loss of care and maintenance as well as loss of "care, education, training, guidance and parental advice."  Id.  Compensation for the loss of said services is not limited to the time period of the child's minority.  See Standardized Civil Jury Instructions for the District of Columbia, §14.05 Wrongful Death Act Damages.  Additionally,

recovery is allowed for the decedent's hospital bills and funeral expenses.  See id.

Although compensation for grief and mental anguish is not permitted under the Wrongful Death Act, "this limitation must not be used to defeat the humanitarian objective of the statute[] and to limit recovery to nominal damages."  Hord, 102 F.Supp. at 794.  The general rule is that substantial damages should be awarded in any death case even though the "loss resulting from the death of a member of the family cannot be ascertained with precision or computed with accuracy."  Id.; Binker, 492 A.2d at 863.  Expert economic testimony valuating the loss of services is only to be used as a guideline.  See Binker, 492 A.2d at 863. The fact-finder is permitted to award significantly more than the expert witness' economic valuation of loss of services.  See id.

Additionally, "it is a well-settled rule that damages in a wrongful death action should be measured from the date of the decedent's death, and not some later date . . .."  Id. at 864. Further, it is "a basic principle that damages in a death case must be measured in the light of the situation existing as of the date of death, and are not affected by subsequent events."  Coleman v. Moore, 108 F.Supp. 425, 427 (D. D.C. 1952).  In other words, the loss of services that a child suffers due to the death of a parent are not reduced or mitigated because said services are subsequently provided by a family member after the parent's death.  See Johnson, 901 F.Supp. at 7; Coleman, 108 F.Supp. at 427.  Otherwise, "no child who lost a parent would ever recover wrongful death benefits in full because the surviving parent would always have a legal obligation to take care of that child."  Coleman, 108 F.Supp. at 427.

Here, the Plaintiff is seeking compensation under the Wrongful Death Act for the loss of the homemaking services (i.e., cooking, bathing, cleaning, etc.) that Ms. Settles would have provided to her four minor children until they reached the age of majority.  The Plaintiff's

expert economist, Richard Lurito, Ph.D., opined that the present-value of Ms. Settles' lost homemaking services is at least $776,733.00. Dr. Lurito's valuation is a guideline to be used by the fact-finder. See Binker, 492 A.2d at 863. The fact-finder is permitted to award significantly more than Dr. Lurito's economic valuation of the loss of Ms. Settles' homemaking services. See id.

It is anticipated that the Defendant will call at trial its purported expert economist, Michael A. Conte, Ph.D., to testify regarding the loss of Ms. Settles' homemaking services. It is anticipated that Dr. Conte will testify that the minor children's loss of their mother's homemaking services is mitigated by the fact that after the death of Ms. Settles, family members began providing the lost services to her children. Dr. Conte's assertion directly violates the "basic principle that damages in a death case" are not reduced or mitigated because the lost services are subsequently provided by others. Coleman, 108 F.Supp. at 427; Johnson, 901 F.Supp. at 7. Additionally, it is anticipated the Dr. Conte will also testify that the start-date to calculate the loss of Ms. Settles' homemaking services began on February 19, 2008 (the day after he completed his report). Inexplicably, Dr. Conte did not begin his calculation of the loss of services on the date of Ms. Settles' death. Instead, he arbitrarily picked a date more than four years after her death as a start-date to begin calculating the loss of services. Dr. Conte's arbitrary start-date violates the "well-settled rule that damages in a wrongful death action should be measured from the date of the decedent's death, and not some later date . . .." Binker, 492 A.2d at 864.[1]

As a result of Dr. Conte's misapplication of the basic principles of wrongful death

---

[1] Additionally, it is anticipated that Dr. Conte will assert that the children's damages should be reduced because they do not have receipts documenting the value of the loss of their mother's homemaking services. On its face, Dr. Conte's assertion is ridiculous. Further, his assertion is not supported by law. See Binker, 492 A.2d at 863 (not requiring receipts or other documentation of lost services); Coleman, 108 F.Supp. at 427 (same); Johnson, 901 F.Supp. at 7 (same).

damages, it is anticipated that he will opine that the present-value of Ms. Settles' lost homemaking services is $582,145.00. Interestingly, if Ms. Settles' date of death is used as the start-date to calculate damages, as required by District of Columbia law, then the application of Dr. Conte's methodology results in a present-value loss of approximately $770,000.00.

In addition to the loss of their mother's homemaking services, Ms. Settles' four minor children are seeking compensation for the loss of their mother's "care, education, training, guidance and parental advice." Hawkins, 782 A.2d at 303; Standardized Civil Jury Instructions for the District of Columbia, §14.05 Wrongful Death Act Damages. The minor children are seeking compensation for the loss of the guidance and advice that their mother would have provided to them during childhood and continuing through to adulthood. See id. Dr. Lurito's economic analysis does not include the loss of Ms. Settles' care, education, training, guidance and parental advice. Although such damages "cannot be quantified with mathematical precision," (Binker, 492 A.2d at 863) the minor children are entitled to an award of "substantial damages" for their loss. Hord, 102 F.Supp. at 794.

Of course, Mr. Settles is also entitled to an award of substantial damages for the loss of his daughter's services. See Binker, 492 A.2d at 863-64. Lastly, the decedent's medical bills total $5,051.10, and the funeral expenses are $3,717.87.

## DAMAGES UNDER THE SURVIVAL ACT

Under the District of Columbia Survival Act, the decedent's estate is entitled to compensation for the conscious pain and suffering the decedent experienced from the time of injury until the time of death. See D.C. Code §12-101; Hawkins, 782 A.2d at 303; Binker, 492 A.2d at 861; Runyon, 463 F.2d at 1321; see also, Standardized Civil Jury Instructions for the District of Columbia, §14.03 Survival Action Damages (instructing jury to "make an award for

any conscious pain and suffering experienced by the deceased between the time of injury and the time of her death").  Because "survival actions often preclude the introduction of direct evidence of consciousness or of pain and suffering . . . the existence of conscious pain and suffering may be inferred from the nature of the decedent's injuries or the circumstances surrounding death."  Binker, 492 A.2d at 861.  There only needs to be more than a "scintilla" of circumstantial or direct evidence of conscious pain and suffering.  Id. at 860.

Although pain and suffering "is not susceptible to any sort of precise calculation," (Lacy v. District of Columbia, 408 A.2d 985, 989 (D.C. 1979)), the "physical and emotional pain that occurs in the minutes of hours before death is unquestionably unique in intensity." Finkelstein v. District of Columbia, 593 A.2d 591, 598 (D.C. 1991); see also, Hawkins, 782 A.2d at 304 (allowing an award of $500,000.00 for two to five minutes of conscious pain and suffering prior to death).  The decedent's "inferable conscious awareness of impending death [may] be considered in the pain and suffering calculus."  Capitol Hill Hosp. v. Jones, 532 A.2d 89, 92 n.12 (D.C. 1987).

Here, there exists overwhelming direct and circumstantial evidence of the conscious pain and suffering experienced by Ms. Settles during the last period of her life.  For example, the George Washington University Hospital ("GWU") records state that Ms. Settles suffered shortness of breath, cough, nausea, and vomiting for three days.  The GWU medical records also state that Ms. Settles' shortness of breath became progressively worse to the point at which she was unable to sleep.  Instead of sleeping, Ms. Settles was forced to sit up in an effort to gasp for breath.  The GWU medical records note that while she was gasping for air, she repeatedly stated, "I can't breathe . . . I can't breathe."  The GWU medical records also note that upon arrival to the emergency room, Ms. Settles was "apneic" and "combative and

6

agitated," – clear, direct evidence of Ms. Settles' struggle to breathe. After struggling to breathe for several days, the GWU medical records note that Ms. Settles eventually "collapsed" in the emergency room.

In addition to the medical records documenting the conscious pain and suffering experienced by Ms. Settles, family members will also testify regarding the pain and suffering that they witnessed Ms. Settles experience.

In short, there exists substantial evidence that Ms. Settles experienced physical pain and severe mental anguish and anxiety while she endured shortness of breath, coughing, nausea, and vomiting for several days. See Binker, 492 A.2d at 861. It is unimaginable the fear and terror Ms. Settles felt as she struggled to breathe while she was aware of her impending death. See Capitol Hill Hosp., 532 A.2d at 89, 92 n.12. The realization of her own impending death was only magnified by the fact that she must have thought that her death would likely result in the death of her unborn child, Ronelle. See id.

## CONCLUSION

Under the District of Columbia Wrongful Death Act, Ms. Settles's four minor children are entitled to a substantial award for the loss of their mother's homemaking services and the loss of their mother's care, education, training, guidance and parental advice. Additionally, Mr. Settles is entitled to a substantial award for the loss of his daughter's services. Recovery is also allowed for Ms. Settles' medical bills and funeral expenses. Under the District of Columbia Survival Act, Ms. Settles' estate is entitled to a substantial award for the conscious pain and suffering she experienced prior to death.

Respectfully submitted,


____/s/ Thomas C. Cardaro_____
Thomas C. Cardaro (#418330)
Jeffrey L. Peek (#470442)
C. Drew Fritch (#485704)
**_Cardaro & Peek, L.L.C._**
201 North Charles Street
Suite 2100
Baltimore, Maryland 21201
202-628-7778
**_Attorneys for Plaintiff_**